UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WILLIAM MOK, individually and on behalf of
all other persons similarly situated,

                Plaintiff,                            14-cv-8081 (PKC)

       -against-                            MEMORANDUM
                                                   AND ORDER
                                                   ON SANCTIONS

21 MOTT ST. RESTAURANT CORP. d/b/a
HOP KEE RESTAURANT, PETER LEE and
PHILIP LEE, jointly and severally,

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

            In this Memorandum and Order, the Court concludes that the attorney for the plaintiff in this action should be sanctioned under the inherent power of the Court and 28 U.S.C. § 1927. The attorney did not disclose to the Court or to opposing counsel that his client had died until eight months after the client's death and four months after he says he learned of it. The death of the client was highly material to the value of this wage and hour action because his client never testified at a deposition and, thus, proving the claim would have been exceedingly difficult. Instead, he obtained adjournments from the Court on the premise that he was negotiating a settlement with defendants on behalf his client. The adjournments had the effect of delaying the filing of a Joint Pretrial Order that would have disclosed that his client would not be a witness at trial. He did not disclose the death to the defendants or the Court until after he announced that an agreement-in-principle had been reached to settle the case. Even then, he only

disclosed the date of the death under a Court Order to do so. The attorney was previously sanctioned in this action for other conduct.

Brandon D. Sherr, counsel for the deceased former plaintiff William Mok, was ordered to show cause in writing by July 10, 2017 why he should not be sanctioned (the "OSC"). (Order of June 23, 2017; Dkt. 61.) The OSC set forth with specificity in 12 numbered paragraphs the facts and circumstances giving rise to the potential sanction. In response, Sherr submitted an affidavit in which he has admitted many of the facts in the OSC. He also submitted a declaration from his lawyer on the sanctions issue, setting forth argument and possibly mitigating circumstances. Defendants have requested reimbursement of attorneys' fees of $7,335.91 reflecting fees incurred since the undisclosed death of the plaintiff.

The Court now sets forth its findings of fact and conclusions of law:

1. William Mok, the sole plaintiff in this wage and hour action, died on September 22, 2016. The Complaint alleged that "[t]he defendants paid the plaintiff in cash until June 3, 2011, and thereafter partially by check and partially in cash" and "failed to provide the plaintiff with a statement with each payment of wages." (Compl. ¶¶ 25, 30.) He was never examined under oath about his claim in a deposition or otherwise and thus there was no testimony that could have been offered under Rule 804(b)(1), Fed. R. Evid., the former testimony rule. The claim would have been difficult to prove without Mok's testimony.

2. In this Court's Order of January 18, 2017, the Court ordered as follows: "Plaintiff's counsel shall forthwith (and no later than seven (7) days from this Order) purge his willful non-compliance with this Court's Order of February 17, 2016, as extended through May 23, 2016, by filing all final pretrial submissions. To the extent this requires the merger of the

plaintiff's portion of the Joint Pretrial Order with the defendants, defendants are ordered to cooperate."  Compliance with the January 18 Order would have revealed to the Court and opposing counsel that Mok would not be a witness at trial because plaintiff's portion of the Joint Pretrial Order would have listed trial witnesses.  Rule 26(a)(3)(A)(i), Fed. R. Civ. P. & Individual Practices at ¶ 6(A).

    3. Sherr admits that he "learned of the death of the plaintiff while attempting to communicate with the plaintiff following the Court's January 18, 2017 order. . . ." (Sherr Ltr. June 8, 2017; Dkt 57.)  "I can unequivocally and with as much certainty as these words can convey, state that I never learned of the plaintiff's death until January 2017." (Sherr Aff't, ¶ 18.)

    4. Sherr explains why and how he learned of his client's death: "I learned of the plaintiff's death in January 2017 because of one simple reason.  I tried obtaining settlement authority in January 2017 when we realized the Court was clearly and justifiably upset.  That is when I leaned of his death." (Sherr Aff't, ¶ 21.)  Implicit in this statement is that he was unable to obtain settlement authority from the deceased plaintiff.

    5. Instead of filing the required portions of the Joint Pretrial Order, Sherr began his efforts to negotiate a settlement of Mok's claim no later than January 25, 2017 when defendants' counsel wrote to the Court to advise that the parties had renewed their settlement discussions and therefore asked for an adjournment of the date for filing the Joint Pretrial Order. (Minsley Ltr., Jan. 25, 2017.)

    6. Concealing Mok's death from the Court and his adversary, Sherr wrote to the Court on February 22 advising that "[t]his firm represents the plaintiff in the above-referenced action.  The plaintiff moves, with the defendants' consent, to extend the deadlines . . . .," which included the Joint Pretrial Order.  (Sherr Ltr., Feb. 22, 2017; Dkt. 51.)

7. In his February 22 letter to the Court, Sherr represented that "the representatives of the parties are continuing settlement negotiation." He did not tell the defendants that his client was dead and that he had no lawful authority to engage in settlement discussions.

8. Again without disclosing to opposing counsel or the Court that Mok was dead, Sherr wrote to the Court on March 8, 2017 advising that "the parties have agreed to terms of settlement" and again identified himself as one of the "Attorneys for Plaintiff." (Sherr Ltr. Mar. 8, 2017; Dkt. 53.) He again sought an adjournment of the date for filing the Joint Pretrial Order.

9. In granting an adjournment of the date for filing the Joint Pretrial Order to June 8, 2017 (under the false pretense that there was a plaintiff and that the parties had agreed to the terms of a settlement), the Court wrote "FINAL-NO MORE-THIS IS IT. FAIR WARNING." (Order of Mar 9, 2017; Dkt. 54.)

10. On June 7, 2017, Sherr, aware of the Court's admonition in its Order of March 9 and aware that there was no representative appointed for the estate, decided to come partially clean. He wrote to the Court disclosing for the first time to the Court and to the defendants that "the plaintiff is deceased. . . ." (Sherr Ltr., June 7, 2017; Dkt. 55.) In his letter of June 7, Sherr did not disclose when Mok died or when he learned of his death. The Court denied the application and directed that the parties "forthwith" advise the Court of the date of plaintiff's death. (Order of June 8, 2017; Dkt 56.)

11. As required by the Court Order of June 8, Sherr disclosed for the first time to the Court and to the defendant that his client had died on September 22, 2016. (Sherr Ltr., June 8, 2017; Dkt 57.)

12. At no time prior to June 7 did Sherr advise defendants' counsel, who had participated in the settlement negotiations, that Mr. Mok had died. Defendants' counsel wrote to the Court on June 8 as follows: "This news of Plaintiff's death, and particularly the fact that Plaintiff has been deceased since September 2016 came as a shock and a surprise to me, as at all times prior to today, and through the negotiation of the settlement, it had been represented to me by Plaintiff's counsel that Plaintiff, who gave no pretrial deposition testimony and whose testimony was never preserved in any way, while ill, was prepared to proceed with the case and was ready, willing and able to testify at trial." (Minsley Ltr., June 8, 2017; Dkt 58.)

13. In response to the OSC, Sherr does not dispute that his actions amounted to professional misconduct: "With the knowledge of his death, my decisions going forward at that time were profoundly incorrect and violated the Rules of Professional Conduct. Initially, I tried to settle the case and we were willing to resolve this case at a figure less than our previous demand." (Sherr Aff't, ¶19.)

14. Sherr describes his conduct as "foolish and against all the rules" but not taken with "intent or premeditation." (Sherr Aff't, ¶ 44.) The Court cannot discern the extent of "premeditation" but it can comfortably and clearly find that his actions were taken with "intent" and were subjectively in bad faith. He knew he was purporting to settle a case on behalf of a dead client without disclosing that his client was dead. He knew full well that his client had not testified at a deposition, that his client had peculiar knowledge of the hours that he had worked and that disclosure of the death would have materially affected the value of the claim. He knew that he had represented to the Court that he was one of the "Attorneys for Plaintiff" and was endeavoring to negotiate a settlement. He knew that the plaintiff could not agree to the terms of a settlement because he was dead and no lawful representative of the estate had been appointed.

15. The fact that Sherr knew there was no authorized representative for the estate is proven by his own admission that, behind the scenes, he was endeavoring to have one appointed. (Sherr Aff't, ¶ 31.)  Also, his efforts to have an authorized representative appointed proves that he knew that one was required.

16. Sherr attempts to excuse his conduct based upon supposed ignorance of the law but his claim is undermined by the verified petition that he was required to submit to become a member of the bar of this Court.  To become a member, Sherr was required to attest to the fact that he "had read and is familiar with  (a) the provisions of the Judicial Code (Title 28, U.S.C.) which pertain to . . . practice in, the United States District Courts; (b) the Federal Rules of Civil Procedure;. . .[and] (f) the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York . . . ."  See also on-line application for admission (https://pearl.nysd.uscourts.gov/admissions/admissionshtml.html.)  Thus, he had actual knowledge of 28 U.S.C. § 1927, Rule 25(a), Fed. R. Civ. P., and Rule 3.1(a) & (b)(3), 3.2, 3.3(a)(1) &(e), 4.1 and Rule 8.4(c) & (d), N.Y. Rules of Professional Conduct ("N.Y. Rules").

17. Under Local Civil Rule 1.5, the N.Y. Rules govern the conduct of attorneys appearing in this Court.  The fact that an attorney has violated one of the N.Y. Rules does not necessarily mean that his or her conduct is sanctionable under either the inherent powers of the Court or 28 U.S.C. § 1927.   The N.Y. Rules however are relevant and useful norms that this Court may take account of in assessing whether the lawyer acted in bad faith or unreasonably and vexatiously.

18. Rule 3.3(a)(1) provides that "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or

law previously made to the tribunal by the lawyer. . . ." As Sherr knew, his statement to the Court that he was the lawyer for Mok after Mok had died were false statements of fact.

19. Rule 3.3(e) provides that "In presenting a matter to a tribunal, a lawyer shall disclose, unless privileged or irrelevant, the identities of the clients the lawyer represents and of the persons who employed the lawyer." Sherr did not disclose that he had no client in this action and instead stated that his client was the then-deceased Mok.

20. Rule 3.4 addresses "Fairness to Opposing Party and Counsel." Rule 3.4(3) provides that "A lawyer shall not: (a)(3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal. . . ." Sherr knowingly failed to disclose his client's death, which he was obliged to reveal. See Virzi v. Grand Trunk Warehouse, 571 F. Supp. 507 (E.D. Mich. 1983); Matter of Forrest, 730 A. 2d 340 (N.J. 1999).

21. Had Sherr disclosed his client's death in January 2017, as he was obligated to do, the case would have proceeded quite differently. The Court would have stayed the action for 90 days and ordered the substitution of a proper party. It does not necessarily follow that a proper representative would have been appointed in a timely manner or that a proper representative, if timely appointed, would have proceeded with the action or that a proper representative would have allowed Sherr to proceed as attorney for the estate, particularly given the sanction that was imposed in the January 18, 2017 Order. If a proper representative were appointed, he or she would be free to authorize settlement discussions or not. Any such discussions would have proceeded on the basis that there was no testimony that could be offered from Mok as to the undocumented hours he worked.

22. As the Court is now aware, it is doubtful that any personal representative would have been appointed in a timely manner, or ever, for reasons that are unique to Mok and

are described in Sherr's affidavit. (Sherr Aff't, ¶ 31.) In that circumstance, defendants would have incurred no legal fees after the entry of the Court's 90-day stay because the action would have been dismissed. Rule 25(a), Fed. R. Civ. P. ("If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.").

23. The record before this Court establishes with clarity that Sherr acted in subjective bad faith and that he unreasonably and vexatiously prolonged the proceedings. Because of its fee shifting provision, Sherr and his firm stood to gain from a recovery on the Fair Labor Standards Act ("FLSA") claim but the claim did not belong to Sherr or his firm. FLSA claimants and their families are often ignorant of their rights but that does not give a lawyer the right to proceed as if the existence of a client were a mere legal technicality.

24. Sherr unnecessarily caused defendants to incur attorneys' fees in negotiating with him. Also, his conduct has taken precious judicial time away from other deserving litigants in other cases who seek judicial rulings on habeas corpus petitions, naturalization petitions, criminal cases, personal injury cases, civil rights cases, social security appeals and all other manner of cases.

25. In mitigation, Sherr has expressed remorse and shows an acceptance of responsibility. He states that "My conduct and decisions in this case were wholly inappropriate and violated FRCP 25. The cases on this topic are clear that I should have disclosed Mr. Mok's death to the Court and opposing counsel when I learned of it in January 2017." (Sherr Aff't, ¶ 45.)

26. Sherr was admitted to the bar in 2011 and has been practicing for six years, a relatively short period of time. He has never been the subject of professional discipline.

27. Sherr has already been sanction $3,000 for his conduct in this case. (Order of January 18, 2017.) Because there was no overlap in the time period covered by the sanction and the sanction Order was issued before he learned of his client's death, the prior sanction is not a mitigating circumstance.

28. Taking into the account the entirety of Sherr's submissions in opposition to the OSC and the record in this action, the Court will impose the sanctions that follow. Based upon the inherent power of the Court, the Court imposes a monetary sanction of $3,000 to be paid into the Registry of the Court within 90 days. Chambers v. NASCO, Inc., 501 U.S. 32 (1991). As a sanction under 28 U.S.C. § 1927, the Court will require Sherr to pay defendants' legal fees not from the date of Mok's death, as defendants suggest, but from the date of the misconduct, i.e. when Sherr had a duty to disclose but did not which, viewing the facts in light most favorable to Sherr, was January 25, 2017(the date of Minsley's letter reporting the restart of settlement discussions); all fees from that date are causally (and not merely temporally) related to the sanctionable conduct. Virginia Properties, LLC v. T-Mobile Ne. LLC, 865 F.3d 110 (2d Cir. 2017). Defendants may resubmit their fee application consistent with the foregoing within 14 days. Sherr may respond to the resubmitted fee request 7 days after defendants' filing.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 8, 2017